STATE, APPELLANT, *v.* HODGE, RESPONDENT.

(No. 6,353.)

(Submitted January 10, 1929.   Decided January 25, 1929.)

[273 Pac. 1049.]

*Mr. L. A. Foot,* Attorney General, *Mr. I. W. Choate,* Assistant Attorney General, and *Mr. W. E. Keeley,* for Appellant, submitted a brief; *Mr. Keeley* argued the cause orally.

*Mr. Lester H. Loble* and *Mr. Hugh R. Adair*, for Respondent, submitted a brief; *Mr. Adair* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal by the state from an order granting the defendant a new trial following his conviction on a charge based upon section 11354, Rev. Codes 1921, which provides: "Every person having upon him a deadly weapon with intent to assault another is guilty of a felony, and, upon conviction thereof, shall be punished by imprisonment in the state prison

for a term of not less than one year nor more than five years.'' The information charged that defendant, on or about the twenty-fourth day of May, 1927, at and in Powell county, Montana, did then and there unlawfully, intentionally and feloniously have upon him a deadly weapon, to-wit: a large revolver, commonly called a six-shooter, with intent in him, said defendant, then and there, to assault one Antwine Thrasher.

The defendant is a sheepman, the prosecuting witness, Thrasher, a cattleman. True to history, this controversy arose over range rights. On the morning of the day mentioned in the information the prosecuting witness, with his hired man, was driving 200 cattle from his ranch to the range along the road which runs from Gold Creek to the old town of Pioneer. The road, it seems, is a public highway. At the point of controversy it passes through leased lands of the defendant. Approaching the Casper Gehrdts Placer, leased by defendant, the road is fenced, but before reaching the Placer the fence ends. Just before the cattle got to the end of the fence, the defendant, on horseback, was seen in the middle of the road. He was from 50 to 75 feet from Thrasher. He inquired of Thrasher, ''Where are you going with those cattle?'' to which Thrasher answered, ''Out on the range.'' This much seems clear, but the evidence is in conflict as to what followed. There was an altercation in which considerable violent language was employed. The prosecuting witness testified that after he told defendant he was going to put the cattle on the range, the defendant, calling witness an opprobrious name, told him he ''was not going any farther with them,'' turned his horse around ''to go back,'' drew a six-shooter, waved it in the air, and said (opprobrious name again), ''You go across here and you won't come back. I will kill you.'' ''He called me this name and then turned around and waved the gun and then I turned around and went home. When he pulled the gun he said he would kill me if I went over there.''

Mr. Lingenfelter, Thrasher's employee, said that as they were just about at the end of the lane the defendant rode over

"from his end of the land" and asked Mr. Thrasher where he was going with the cattle and when Thrasher said "over yonder," pointing to the east, defendant turned his horse around, whirled the gun over his head, "and made some threatening remarks if Thrasher went over on Mr. Hodge's land. He said something about shooting him if his cattle crossed the line." Witness Lingenfelter said that thereupon he held the cattle and Thrasher went home. After Thrasher left, defendant spoke to the witness; "he asked me to hold the cattle off his land, and I asked him where his line was, and he showed me where his line went through." The witness remained there with the cattle until about 5 o'clock in the evening and then started them "towards home."

Defendant's version of the altercation is that he asked Thrasher where he was going to take the cattle, to which Thrasher replied that he was going to put them over on the range, pointing to where defendant's camp was at the creek, and right where defendant's corral was, "and I told him I did not think he was. * * * For probably the next five minutes there was considerable said by both parties. * * * While we were there talking, nothing was done about driving the cattle one way or the other. He was on one side and I was on the other, and the cattle were going straight for the creek all the time and over this Casper Gehrdts Placer. The cattle were getting away from me. It wasn't Thrasher I was bothering about, but it was to get the cattle back. Thrasher kept hollering something and finally I pulled a gun out of the scabbard and I swung it around my head and said, 'Come on with your cattle. If you are going to drive them over here I am going to stop them as fast as they cross the creek.' I did not make any threat particularly against Thrasher himself."

The sole issue in the case is whether the defendant, at the ▇▇▇ time in question, had armed himself with the specific intent of assaulting the prosecuting witness: was his purpose, his intent, in having the revolver upon him to assault the prosecuting witness? This is not an assault case, nor is it a

case of attempted assault. It is not permissible to infer an intent to assault Thrasher simply from the admitted fact that the defendant had a revolver upon him at the time of the altercation. A man has a right to bear a deadly weapon upon the open road if he conceal it not, and he has a right to bear it upon his own premises even if he conceal it. (Secs. 11303, 11304, Rev. Codes 1921.)

From time immemorial it has been a general practice of those riding or herding upon the public range to carry firearms, and there can be no question as to the right of a citizen to do so if the weapon be not concealed (sec. 11303, supra); indeed, the right of an alien to do so, if he be engaged in tending animals held in herd, is recognized, impliedly, by the provisions of section 3708, Rev. Codes 1921. The right of one to bear arms in defense of his home, person and property is declared by section 13 of Article III of the Constitution of Montana: "The right of any person to keep or bear arms in defense of his own home, person and property, or in aid of the civil power when thereto legally summoned, shall not be called in question. Nothing herein contained shall be held to permit the carrying of concealed weapons."

The court instructed the jury that a party has a right to protect real or personal property in his possession and may use force to prevent trespass upon real property or an unlawful interference with personal property; and that if they believed from the evidence that Antwine Thrasher attempted to drive his cattle over the lands in possession of the defendant, defendant would have the right to use such force as would be necessary to prevent such trespass upon the lands so in possession of the defendant; that if they believed from the evidence that the defendant threatened to kill the cattle of Thrasher, that threat in itself would be no evidence that the defendant intended to assault Thrasher with a deadly weapon.

The defendant objected to the giving of instruction No. 11, in which the court told the jury that if they found from the evidence beyond a reasonable doubt that the defendant, as

alleged in the information, carried a deadly weapon with the intent to assault Antwine Thrasher, it is immaterial to this case whether at the time the defendant was upon a public highway or at some other place adjacent thereto.

Whether upon the facts shown it can be said the defendant is guilty of an assault is very doubtful from any viewpoint. (See *Johnson* v. *State*, 19 Tex. App. 545; *State* v. *Roby*, 43 Idaho, 724, 254 Pac. 210), but this we do not have to consider. If it be conceded that the defendant did commit an assault upon Thrasher, that would not be enough to sustain .conviction of the crime charged, in the absence of proof, circumstantial or otherwise, satisfying the jury beyond a reasonable doubt that the defendant armed himself for the purpose of committing the assault.

To prove the offense charged there must be something more than that the defendant committed an assault. There must be proof that he bore the deadly weapon for the purpose of committing the assault. He must have armed himself with the intent to commit it. If one arms himself for a lawful purpose and bears the arm with no thought of trouble with another, but unexpectedly encounters a situation in which he uses the arm in committing the assault, he is amenable to the law for the assault but not for having upon him a deadly weapon with the intent to commit the assault. To illustrate: If the defendant had armed himself for the purpose of killing a predatory animal and while in pursuit of that object had encountered the situation the evidence discloses, and had committed an assault on the prosecuting witness, by the use of the firearm, he would be punishable for the assault but not for having the firearm upon his person. In other words, the specific intent which is an essential ingredient of the offense charged must be proved in order to sustain a conviction.

It is true that upon a prosecution for the offense charged the fact that one has a deadly weapon upon his person is one circumstance going to make up the offense but that alone is not sufficient.

The evidence adduced is insufficient to sustain the conviction and the action of the court in granting the motion for a new trial was correct. But if the evidence were conflicting we should not disturb the court's order. (See *State* v. *Broadwater*, 75 Mont. 350, 243 Pac. 587, and cases cited.)

If a new trial shall be had we may say for the guidance of the trial court that we do not see any error in criticised instruction No. 11.

The order is affirmed.

ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD and HON. WM. H. POORMAN, District Judge, sitting in place of MR. JUSTICE ANGSTMAN, disqualified, concur.